IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KYRON LA-TRELL WILLIAMS, A MINOR,
BY & THROUGH HIS MOTHER
AND NATURAL GUARDIAN,
LAVINA SMITH INDIVIDUALLY AND ON
BEHALF OF ALL HEIRS AT LAW &
WRONGFUL DEATH BENEFICIARIES
OF MARSHAWN WILLIAMS, DECEASED AND
DONNIE WILLIAMS                                                   PLAINTIFFS

ZA'RIYA WILLIAMS AND THE
ESTATE OF MARSHAWN WILLIAMS                    INTERVENOR PLAINTIFFS

VS.                                        CIVIL ACTION NO.: 3:15CV103 HTW-LRA

CITY OF YAZOO, MISSISSIPPI; YAZOO CITY POLICE DEPARTMENT;
ANDRE LLOYD, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
PATRICK JACO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
CHRIS DEAN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
SHIFT SUPERVISOR "JOHN DOE #1", INDIVIDUALLY AND IN HIS OFFICAL
CAPACITY; LIEUTENANT ARTIS HARRIS, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; OFFICER KENYON BANKS, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY; SHARON VANCLEAVE, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY; CLIFTON TILMON, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; ARTHUR THOMPSON, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; TRACY LANGSTON, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY, JOHN AND JANE DOES #6-10
DEFENDANTS

**THIRD AMENDED COMPLAINT (Jury Trial Demanded)**

COME NOW, the Plaintiffs and Intervenor Plaintiffs and file this third amended complaint for damages against City of Yazoo City, Mississippi, Yazoo City Police Department, Chief of Police Andre Lloyd, individually and in his official capacity; Officer Patrick Jaco, individually and in his official capacity; Officer Chris Dean, individually and in his official capacity; Shift Supervisor "John Doe #1", individually and in his official capacity; Lieutenant Artis Harris,

individually and in his official capacity; Officer Kenyon Banks, in his individual and official capacity; Officer Arthur Thompson, individually and in his official capacity; Officer Clifton Tilmon, individually and in his official capacity; Sharon Vancleave in her individual and official capacity; Tracy Langston in her individual and official capacity; and John or Jane Does 5-10, in their individual and official capacities.

## I. PARTIES

1. Kyron La-Trell Williams, a minor, is a resident of the First Judicial District of Hinds County, Mississippi, who resides at 2051 Robinson Road in Jackson, Mississippi.

2. Plaintiff Donnie Williams is an adult resident of Humphreys County, Mississippi, who resides in Belzoni, Mississippi.

3. Za'Riya Williams, a minor, is a resident of the Humphreys County, Mississippi, who resides in Isola, Mississippi.

4. The Estate Marshawn Williams is lodged in Yazoo County Chancery Court #14-00241 where Keiara Wiley and Donnie Williams have been appointed Co-Administrators.

5. The City of Yazoo is a municipal corporation, which can be served with process by service on Delores Harris, City of Yazoo City Clerk, at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

6. The Yazoo City Police Department is a municipal corporation, which can be served with process by service on Delores Harris, City of Yazoo City Clerk, at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

7. Defendant, Yazoo City Chief of Police Andre Lloyd (hereinafter Chief Lloyd), is employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served

with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

8. Defendant, Officer Patrick Jaco, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

9. Defendant, Officer Chris Dean, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

10. Defendant, Shift Supervisor, John Doe #1, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194. Plaintiffs do not currently know the name of John Doe #1, but should be able to ascertain his identity during discovery. John Doe #1 was the Shift Supervisor for the Yazoo City Police Department on the night of May 18, 2014.

11. Defendant, Yazoo City Lieutenant Artis Harris, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194. Artis Harris was the Lieutenant for the Yazoo City Police Department on the night of May 18, 2014.

12. Defendant, Yazoo City Officer Kenyon Banks, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194. Kenyon Banks was an officer for the Yazoo City Police Department on the night of May 18, 2014.

13. Defendant, Sharon Vancleave, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and she may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194. Sharon Vancleave was the jail officer on duty that was alerted to

Mr. Williams need for medical help by the other inmates, but refused to call on the night of May 18, 2014.

14. Defendant, Officer Clifton Tilmon, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

15. Defendant, Officer Arthur Thompson, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and he may be served with process at 128 E. Jefferson Street, Yazoo City, Mississippi 39194.

16. Defendant, Tracy Langston, employed with the City of Yazoo, MS, is an adult resident of the City of Yazoo, and she may be served with process at 311 Calhoun, Yazoo City, MS 39194.

17. Defendants John and Jane Does 6-10 are officers of the Yazoo City Police Department, who may be joined as Defendants in this action, and who may be served with process at 128 E. Jefferson St., Yazoo City, Mississippi 39194 when their identities are ascertained.

## II. JURISDICTION/VENUE

18. This Court has jurisdiction over this action because it arises under the laws of the United States, specifically Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983. Venue is proper in this district under 28 U.S.C. 1391, because a substantial part of the events or omissions giving rise to the claim occurred within the district.

19. At all times herein, the Defendants were acting under color of law of the State of Mississippi.

## III. FACTS

20. On May 18, 2014, Officer Arthur Thompson, Officer Clifton Tilmon, and Officer Chris Dean, with other unknown officers with the Yazoo City Police Department responded to 221 North Ward Street, Yazoo City, Mississippi in response to a call by Lavina Smith.

21. When the police arrived at 221 North Ward Street, they found Marshawn Williams sitting on the front porch. While Officers Thompson and Dean were there, Marshawn grabbed his side and fell over. He was complaining of pain in his side.

22. Lavina Smith was interviewed by an Officer, and Marshawn was outside speaking with another Officer. While Lavina was being interviewed, an Officer came in and asked for the mace to use on Marshawn. Lavina could hear Marshawn and he was talking to the police in a normal tone and not resisting in any way.

23. Mr. Williams had pain in his legs and could not walk. The officers on the scene considered his inability to walk due to his medical condition to be resisting. Officers assaulted Mr. Williams causing bruising to his body. They "maced" him, and dragged him to the street. While Mr. Williams was laying in the street near the gutter the officers maced him while he was handcuffed causing Mr. Williams to scream out in pain.

24. Mr. Williams never resisted, nor gave any reason for the officers to use force against him. He was unable to walk due to his internal injuries. The officers carried him to the patrol car and forcibly threw him into the car.

25. The Officers, with deliberate indifference to his physical and medical condition, forcibly threw him into the car because he had lost the use of his legs. The officers did not provide him with any medical attention and acted in reckless disregard to his life and safety. Mr. Williams was placed under arrest and transported to the jail at 9:55 p.m.

26. The Defendants did not have any probable cause to arrest Mr. Williams. His arrest was done in retribution for what they perceived as his non-compliance due to his medical condition. While being transported to the jail, Mr. Williams lost consciousness twice in the back of the police car. The officers did not provide him any medical treatment based on his losing consciousness.

27. When he arrived at the city jail, he was carried into the booking room and placed in a chair. After being placed in the chair, Mr. Williams continued to be in medical distress. He lost control of his bodily functions and urinated on himself.

28. The officers instead of checking his medical condition, made fun of his condition and did not provide him with any medical care. Unable to walk, the officers dragged Mr. Williams into a cell and dropped him on the floor.

29. Defendant Jaco, after witnessing the condition of Mr. Williams, called Lavina Smith and inquired as to what medical condition Mr. Williams had because of his deteriorating condition. Ms. Smith handed the telephone to Mr. Williams' mother, Donnie Williams, who advised that her son had a life threatening medical condition, needed immediate medical treatment and that she was on the way to the police station.

30. Within minutes of the telephone conversation with Defendant Jaco, Ms. Williams arrived at the Yazoo City Police Department where she met with Lieutenant Artis Harris, Supervisor John Doe #2, Officer Jaco, Officer Kenyon Banks, Officer Sharon Vancleave, and Officer Dean. She informed them all of Mr. Williams medical condition that he had since he was a child. She warned them of his bleeding disorder and liver condition. She repeatedly requested to see him to check his health. She also repeatedly questioned that these individuals call an ambulance or take Mr. Williams to the hospital. The Defendants

refused her access to Mr. Williams, and failed to call an ambulance or transport him to a hospital. She proceeded to inform them that even a minor injury could be fatal to him due to his medical condition. Ms. Williams was forced the stay near the front desk knowing her son was suffering in the next room with a deadly condition. This had a direct emotional impact on her and she became visibly upset. The Defendants accused her of being aggressive and ordered her to leave.

31. No one checked on the status of Mr. Williams after his mother warned them of his condition. In fact, the Defendants made jokes about his condition to his mother. They laughed that he had urinated on himself and vomited. They joked that they could show her the chair where he did it.

32. During this time, inmates in the jail had noticed that Mr. Williams was deathly ill.  They began to ring the panic button in their cells and screamed for help.  Several of the inmates banged on their cell doors and wall to get the attention of the officers at the jail.  No one answered or came and in fact, Defendant Tracey Langston, ignored the calls for help.

33. Finally, a female officer, now known to be Tracey Langston, came over the speaker and was informed by the inmates that Mr. Williams was in critical condition and needed an ambulance immediately. She was informed that he was having trouble breathing and believed he was dying. She informed the inmates that no one could come until a lieutenant arrived. The inmates continued to scream for help, but the Defendants refused to provide Mr. Williams with any assistance.

34. After roughly two hours of yelling for help, Mr. Williams died in his cell having never been checked on by jail personnel or having received any medical attention. Ms. Williams was summoned back to the police department at 4:00 am on May 19, 2014. She met with

Defendant Chief Lloyd who informed her that her son had died. Defendant Chief Lloyd admitted that Mr. Williams death was the City's fault and that he would not stand for what happened. He informed her that Officer Dean had had numerous complaints against him for his behavior and conduct while serving as a Yazoo City police officer.

## IV. CLAIMS

### Count One - False Arrest

35. Plaintiffs incorporate the allegations contained in paragraphs 1 through 34 above.

36. As a direct and proximate result of the actions of Officers Thompson, Dean, Tilmon and other John Doe Defendants, committed under color of law of the state of Mississippi, Marshawn Williams was falsely arrested without probable cause in violation of his Fourth Amendment rights made actionable by 42 U.S.C. 1983.

37. Defendants responding to the 221 N. Ward had not observed Mr. Williams commit any crime, nor had they observed any evidence of Mr. Williams committing a crime. The Defendants did not conduct a proper investigation and lacked any probable cause to arrest Mr. Williams.

38. The Defendants arrested Mr. Williams because he was unable to stand or cooperate with their instructions due to his medical condition, and the Defendants, especially officer Dean, became upset and therefore made the decision to arrest Mr. Williams not for a violation of the law, but to satisfy their malicious and deliberate desire to inflict punishment on him for being unable to follow their directions.

39. After Mr. Williams was "maced," dragged to the street, maced again while in handcuffs, thrown in the police car, and taken to jail, Lavina Smith went to the police department and was then questioned about what happened at the residence. It was after Mr. Williams was

arrested and transported that the police asked what happened and if she wanted to press charges against him.

40. Defendants violated Mr. Williams constitutional rights by depriving him of his liberty without due process of law by taking him into custody and holding him against his will, and by refusing or neglecting to prevent such deprivations thereby depriving Mr. Williams of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

### Count Two - Excessive Force

41. Plaintiffs incorporate the allegations in paragraphs 1 through 40 above.

42. Defendants, alone and/or in concert with one another, used excessive force to effect the illegal arrest of Mr. Williams in violation of his Constitutional rights under the Fourth Amendment to the United States Constitution and made actionable by 42 U.S.C. 1983.

43. Defendants, used "mace" on Mr. Williams when he offered no physical resistance or threats to the officers. Mr. Williams was dragged off the porch and dropped in the gutter, where officers continued to apply "mace" without any justification and while Mr. Williams was in handcuffs.

44. Defendants assaulted Mr. Williams during his arrest when he offered no resistance. This is evidenced by bruising to multiple locations on his torso discovered during the autopsy. The Defendants, acting in concert with one another and under City policy, conspired with one another to cover up and hide the trauma to Mr. Williams that was inflicted by them by secreting him from his family and refusing to provide medical treatment.

45. Defendants caused injury to Mr. Williams by using excessive force that was unreasonable. Mr. Williams was having difficulty walking, and offered no resistance of any kind.

Defendants proceeded to use "mace" and continued physical force against him by dragging, assaulting him, and continuing to apply force after he was on the ground, handcuffed and in pain.

46. The application of unreasonable force against Mr. Williams violated his constitutional rights to be free from excessive force and was the direct and proximate result from the City's failure to train and supervise its officers. Its failure to discipline or protect the public from Officer Dean, whom the Chief admitted was a problem officer and that the City was liable for his actions. Furthermore, the Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so. This conduct deprived Mr. Williams of his constitutional rights.

### Count Three - Due Process - Denial of Medical Care

47. Plaintiffs incorporate the allegations in paragraphs 1 through 46 above.

48. On numerous occasions during the events of May 18, 2014, Mr. Williams was denied necessary and obvious medical attention on numerous occasions. Said denials led directly to his death, and were in violation of his due process rights under the Fourteenth Amendment to the Constitution and made actionable by 42 U.S.C. 1983.

49. Mr. Williams was repeatedly denied necessary medical care when the Defendants had reason to believe he was in need of assistance, when they were told he had a severe medical condition, and when they were repeatedly warned that he was in severe distress and near death.

50. Mr. Williams was in the custody of the Yazoo City Police Department and unable to provide said care for himself. His condition was made worse by the excessive force applied by the

Defendants in violation of his constitutional rights.

51. Mr. Williams was denied medical care due directly to a policy or custom of the City of Yazoo that he was not to be examined until a lieutenant arrived and/or a policy that inmates must wait until the morning to receive medical attention.

52. In addition, Plaintiffs assert that the Defendants denied access to Mr. Williams by his family and refused to provide him with medical treatment or take him to the hospital, even after being expressly told of the grave danger to him if he went unchecked, in an effort to cover up their abuse and excessive force against Mr. Williams.

53. Defendants were then directly informed that Mr. Williams was in dire need of medical help, was having difficulty breathing, and dying by multiple inmates. Defendants offered no assistance, took no steps to help Mr. Williams, and let him bleed to death and die in a jail cell in violation of his due process rights.

54. Defendants had subjective knowledge of Mr. Williams' substantial risk of serious medical harm based on his underlying medical condition and were deliberately indifferent regarding that risk. This indifference ultimately resulted in Mr. Williams' death. Additionally, the City's policies, procedures and practices of denying inmates needed medical care, directly led to the death of Mr. Williams and the City is liable under 42 U.S.C. 1983.

## Count Four - Failure to Train/Supervise

55. Plaintiffs incorporate the allegations in paragraphs 1 through 54 above.

56. The failure of the City of Yazoo to properly train its police officers and jail staff demonstrated a deliberate indifference to the rights of Mr. Williams. The City of Yazoo failed to adequately and/or train at all its officers and employees in the proper medical care to be given to persons it takes into custody. This failure in training relates directly to the

death of Mr. Williams.

57. The Defendants City of Yazoo and Chief Lloyd, by failing to properly train its personnel on when and how to provide medical treatment, demonstrated deliberate indifference to the rights of inmates in the care and custody of the city. Defendants failed to provide custodial officials with minimal training to detect and respond to detect and respond to the obvious medical and mental health needs of arrestees and inmates with known, demonstrable and serious medical and mental health disorders. The employees of the jail, with no training and/or with a directive not to intervene, were left to wait on other officers to arrive while Mr. Williams suffered needlessly and died. This lack of training and/or policy not to provide care to prisoners is evidenced by the jail staff refusing to come check on the prisoner without the lieutenant arriving. The jail staff lacked the proper training for providing a safe environment for Mr. Williams and denied him basic care in violation of his constitutional rights, which directly led to his death.

58. The Defendants City of Yazoo and Chief Lloyd failed to adopt adequate policies and procedures to detect and respond to the obvious medical and mental health needs of arrestees and inmates with known, demonstrable and serious medical and mental health disorders.

**Count Five – Unconstitutional Policy, Practice and/or Custom of Denying Emergency Medical Treatment**

59. Plaintiffs incorporate the allegations in paragraphs 1-58 above.

60. Defendant City of Yazoo had a policy, practice or custom of not providing medical treatment to incarcerated individuals. They maintained a policy, practice, custom or usage which authorized and/or mandated and/or condoned and/or ratified the denial of medical care to arrestees and inmates.

61. The acts and omissions of Defendant City of Yazoo manifested deliberate indifference to the rights of inmates with whom custodial officials came into contact.

62. As a direct and proximate result of the acts and omissions of the Defendant City of Yazoo, Mr. Williams' constitutional rights guaranteed under the Eight Amendment and the Fourteenth Amendment to adequate medical care and caused his death.

### Count Six – Assault

63. Plaintiffs incorporate the allegations in paragraphs 1-62 above.

64. Marshawn Williams was a reasonable person.

65. Defendants intentionally created an apprehension of immediate physical harm by means of an overt gesture, threatening Mr. Williams' for no other purpose than to create in him an apprehension of immediate physical harm.

66. Any reasonable person would also become apprehensive in the face of Defendants' threatening conduct.

### Count Seven – Battery

67. Plaintiffs incorporate the allegations in paragraphs 1-66 above.

68. Without the consent of Mr. Williams, Defendants intentionally, harmfully, and offensively touched Williams by macing him, dragging him to the street, slamming him into the patrol car, and throwing him to the floor in the jail cell.

### Count Seven – Intentional Infliction of Emotional Distress

69. Plaintiffs incorporate the allegations in paragraphs 1-68 above.

70. Defendants intentionally and deliberately inflicted emotional distress on Mr. Williams by violating his constitutional rights, state civil rights, and intentionally refusing to provide him with emergency medical care.

71. Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civil community.

72. The actions of the Defendants were the cause of Mr. Williams' distress.

73. Mr. Williams was a reasonable man.

74. The emotional distress sustained by Mr. Williams was severe and of a nature that no reasonable man could be expected to endure.

75. As a result of the Defendants' conduct, Mr. Williams suffered emotional distress, mental pain and anguish, severe emotional trauma, embarrassment and humiliation.

## Count Eight – Negligence

76. Plaintiffs incorporate the allegations in paragraphs 1-75 above.

77. Defendants owed a duty to supervise and train officers to respond to the medical needs of individuals incarcerated at the facility.

78. Defendants owed a duty to act according to the standard of ordinary care of a Police Department, City, officers, and jail staff the failure of which lead to the denial of medical care to Mr. Williams resulting in his death.

79. Defendants breached this duty by dragging and macing Mr. Williams while in handcuffs. Defendants further breached this duty by refusing to provide medical care to Mr. Williams. These breaches proximately caused Mr. Williams' injuries and death.

## Count Nine – Negligent Infliction of Emotional Distress

80. Plaintiffs incorporate the allegations in paragraphs 1-79 above.

81. Defendants continually negligently inflicted emotional distress on the Plaintiffs.

82. Defendants had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Mr. Williams.

83. Defendants breached their duties to Mr. Williams by ignoring requests for medical assistance and by denying medical care to him.

84. Mr. Williams suffered physical and mental symptoms.

**Count Ten – Negligent Infliction of Emotional Distress (Bystander Recovery)**

85. Plaintiff Donnie Williams incorporates the allegation in paragraphs 1-84 above.

86. Defendants negligently inflicted emotional distress on Donnie Williams.

87. Defendants negligently ignored Plaintiff Donnie Williams' pleas and statements that her son had a life-threatening medical condition that required immediate treatment. They refused to provide him any medical assistance and refused to call paramedics while she stood at the desk pleading. Ms. Williams was forced to stand at the station knowing her son was suffering in the next room.

88. Defendants had a continuing duty to perform their professional services in such a manner as not to inflict emotional distress on Donnie Williams.

89. Defendants breached their duties to Donnie Williams.

90. Defendants actions directly caused Plaintiff Donnie Williams to suffer mental and emotional distress/anguish.

**Count Eleven – Intentional Infliction of Emotion Distress (Bystander Liability)**

91. Plaintiff Donnie Williams incorporates the allegations in paragraphs 1-90 above.

92. Defendants willfully, purposefully and deliberately ignored Plaintiff Donnie Williams' pleas and statements that her son had a life-threatening medical condition that required immediate treatment. They refused to provide him any medical assistance and refused to call paramedics while she stood at the desk pleading. Ms. Williams was forced to stand at the station knowing her son was suffering in the next room.

93. Defendants actions directly caused Plaintiff Donnie Williams to suffer mental and

emotional distress/anguish.

## V. DAMAGES

94. As a result of the deliberate actions of the Defendants, Marshawn Williams suffered severe and excruciating pain that ultimately led to his death.

95. Mr. Williams was assaulted by the police and was subjected to physical abuse including "mace." without justification or provocation and in violation of his constitutional rights under the Fourth Amendment.

96. Mr. Williams was denied life-saving medical care after the police observed his condition on their own, were warned about his condition by his family, were alerted to his condition by other inmates, yet they refused to provide him medical care and Mr. Williams died a slow and agonizing death as a direct and proximate result of their deliberate and willful indifference to his life and constitutional rights.

97. Plaintiffs are entitled to punitive damages as a direct result of the intentional, deliberate, and/or reckless treatment of Mr. Williams in violation of his constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiffs demand judgment against all defendants for all compensatory and punitive damages due and owed including attorney's fees and costs associated with the prosecution of this action, as allowed by federal law. Plaintiff's claims include, but are not limited to the following:

    a.    Actual damages for future loss of income/support and funeral expenses;
    b.    Damages for loss of enjoyment of life which Marshawn Williams suffered;
    c.    Compensatory damages for pain and suffering, emotional distress, suffering, inconvenience, mental anguish, humiliation, shame, fear, and embarrassment which Marshawn Williams suffered and;
    d.    Compensatory damages to Marshawn Williams' wrongful death beneficiaries for loss of affection and companionship.

Plaintiffs seeks compensation for all damages allowed under the law including, but not

limited to, medical bills (past and future) and compensatory damages for her pain and suffering, emotional distress, and mental anguish. Plaintiffs further pray for any other relief deemed appropriate by this Court.

Respectfully submitted this the 15th day of November, 2016.

Respectfully Submitted,

Kyron La-Trell Williams, A Minor By and Through His Mother And Natural Guardian, Lavina Smith Individually and on Behalf of all heirs at Law and Wrongful Death Beneficiaries Of Marshawn Williams, Deceased And Donnie Williams

BY: /s/ *R. Paul Williams, III*
     R. PAUL WILLIAMS, III

Za/Riya Williams, A Minor By and Through Her Mother And Guardian, Keiara Wiley
And the Estate of Marshawn Williams by Keiara Wiley, Co-Administratrix

BY:/s/ *Vallrie L. Dorsey*
VALLRIE L. DORSEY

| | |
|---|---|
| **R. PAUL WILLIAMS, III (MSB #102345)** | **VALLRIE L. DORSEY (MSB# 102538)** |
| **MATT NEWMAN (MSB#103654)** | **TANISHA GATES (MSB# 102071)** |
| **COURTNEY M. WILLIAMS (MSB# 102347)** | **DORSEY & GATES, PLLC** |
| **WILLIAMS NEWMAN WILLIAMS, PLLC** | **P.O. BOX 503** |
| Post Office Box 23785 | Greenwood, MS 38935 |
| Jackson, Mississippi 39225 | (662) 455-2032 |
| Tel: (601) 949-5080 | (662) 455-2034 FAX |
| Fax: (601) 949-3358 | |